1
2
3
4
5
6

**JANATHAN L. ALLEN, APC**
16745 W Bernardo Dr., Ste 260
San Diego, CA 92127
Janathan L. Allen, Esq. (SBN 179650)
jallen@allenbarron.com
Of Counsel: Timothy J. Grant, Esq. (SBN 122593)
tgrant@allenbarron.com
(858) 376-1501; FAX (858) 376-1410

*Attorney for Defendant,*
Student Loan Advocacy Group

7

8          UNITED STATES DISTRICT COURT

9          SOUTHERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| 11  CRAIG CUNNINGHAM, | Case No.:  18cv0329-GPC-JLB |
| 12              Plaintiff, | |
| 13  v. | Judge: Hon. Gonzalo P. Curiel<br>Magistrate:  Hon. Jill L. Burkhardt |
| 14  STUDENT LOAN ADVOCACY | |
| 15  GROUP, and DOES 1–10, | **STUDENT LOAN ADVOCACY** |
| 16              Defendant. | **GROUP'S MEMORANDUM OF**<br>**POINTS & AUTHORITIES RE** |
| 17 | **MOTION TO DISMISS**<br>**PLAINTIFF'S COMPLAINT AND** |
| 18 | **STAY ACTION PENDING**<br>**DISPOSTION OF VEXATIOUS** |
| 19 | **LITIGANT DESIGNATION** |
| 20 | |
| 21 | Hearing Date: June 22, 2018 at 1:30 p.m.<br>Courtroom 2D |
| 22  **IMMEDIATE STAY REQUESTED** | |
| 23 | Action Filed:      February 10, 2018<br>Trial Date:        None set |

24

25          Defendant, STUDENT LOAN ADVOCACY GROUP, submits this Memorandum

26  of Points and Authorities in support of the motion to dismiss Plaintiff's Complaint and to

27  stay the case pending disposition of Plaintiff's vexatious litigant designation.

28

STUDENT LOAN ADVOCACY GROUP'S MEMORANDUM OF POINTS & AUTHORITIES RE MOTION TO
DISMISS PLAINTIFF'S COMPLAINT AND STAY ACTION PENDING DISPOSTION OF VEXATIOUS LITIGANT
DESIGNATION

18cv0329-GPC-JLB

# **TABLE OF CONTENTS**

I.    INTRODUCTION    …………………………………………………1

II.   ISSUES PRESENTED…………………………………………………2

    1.  NO STANDING TO SUE FOR TCPA SECTION 227(b) CLAIMS…....2

    2.  NO STANDING TO SUE FOR TCPA SECTION 227(c) CLAIMS…....2

    3.  NO PENDENT JURISDICTION-BPC § 17200 CLAIMS……...3

    4.  VEXATIOUS LITIGANT PROTECTION- STAY REQUESTED……..3

III.  STATEMENT OF FACTS…………………………………………4

IV.   LEGAL ARGUMENT…………………………………………………6

    A.    TCPA'S PROHIBITIONS AGAINST USE OF AN ATDS TO SEND A TEXT TO A CELL PHONE DO NOT INCLUDE TELEMARKETERS WHOSE SOURCE OF THE NUMBER CALLED IS AN OUTSIDE LEAD SOURCE……………………………………………...6

    B.    NO STANDING TO SUE UNDER TCPA SAFEGUARDS AGAINST CONTACTING DO NOT CALL LIST CONSUMERS..12

    C.    NO STANDING TO SUE UNDER THE PENDENT STATE LAW CLAIMS…………………………………………..15

    D.    PLAINTIFF'S TCPA & STATE LAW CLAIMS ARE SUBSTANTIVELY FLAWED AND FAIL TO STATE A CLAIM AGAINST DEFENDANT…………………………………………..16

    E.    VEXATIOUS LITIGANT PROTECTION SHOULD BE AFFORDED SLAG, AND A STAY SHOULD BE PUT IN PLACE UNTIL DISPOSITION OF THAT ISSUE IS RESOLVED…………………..19

        1.    Monetary Rewards Are Improperly Being Sought……………..20

        2.    This Court Has Authority to Issue Pre-Filing Order and Sanctions……………………………………………...21

        3.    Plaintiff's Conduct Meets The Federal Standard for "Vexatious Litigant"……………………………………………21

i

a.   Plaintiff's History of TCPA Claims & In Particular Whether They Entailed Vexatious, Harassing or Duplicative Lawsuits………………………………………………..22

b.   Plaintiff's Improper Motive in Pursuing TCPA Claims…...22

c.   Plaintiff's Representation by Counsel……………………..23

d.   Plaintiff Has Caused Needless Expense to Other Parties or has Posed an Unnecessary Burden On The Courts & Their Personnel…………………………………………………...23

e.   Whether Relief Other Than Pre-Filing Injunction Would Be Adequate To Protect Courts & Other Parties……………..23

V.   CONCLUSION…………………………………………………………..24

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)......2, 16

*ACA International v. FCC*, No. 15-1211, 2018 U.S. App. LEXIS 6535, at *8 (D.C. Cir. Mar. 16, 2018) ........................................................................................ 1-3, 6-11

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955 (2007).......2, 3, 7, 18, 19

*Charvat v NMP, LLC* (6th Cir. 2011) 656 F. 3d 440, 447-448) ..................................... 13

*Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 946-47 (7th Cir. 2013) ..................... 18

*Dominguez v. Yahoo, Inc.*, 629 F. App'x 369, 372-373 (3d Cir. 2015) .................... 8, 12

*De Long v. Hennessey*, 912 F.2d 1144, 1147 (9th Cir. 1990) .................................21, 22

*Doran v. Del Taco, Inc.*, 373 F.Supp.2d 1028, 1034 (C.D. Cal. 2005) ......................... 20

*Doran v. Vicorp Rests., Inc.,* 407 F. Supp. 2d 1115, 1118 (C.D. Cal. 2005) ................... 4

*Hanley v. Green Tree Servicing, Inc.,* 934 F. Supp. 2d 977, 981 (N.D. Ill. 2013).......... 17

*In re Hartford Textile Corp.,* 681 F.2d 895, 896 (2d Cir. 1982) ..................................... 4

*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Report and Order, 18 FCC Rcd. 14014, 14091 (2003) ("2003 TCPA Ruling") ..... 7

*In Re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Request of ACA International for Clarification and Declaratory Ruling, CG Docket No. 02-278, FCC Docket No. 07-232, 23 FCC Rcd. 559 (2008) ........................ 8

*Iwachi v. N.Y. City Bd. Of Elections*, 273 F. Supp. 2d 224, 228 (E.D. N.Y. 2003)........23

*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. 7961, 7970 (2015)................................................................. 8

*Kwikset Corp. v. Superior Court*, (2011) 51 Cal. 4th 310, 322-323................................ 15

*Marks v. Crunch San Diego, LLC*, 55 F. Supp. 3d 1288, 1291 (S.D. Cal. 2014) .8, 11, 12

*Moy v. United States*, 906 F.2d 467, 470 (9th Cir. 1990).............................................. 2

*Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir.1984) ................ 17

*Safir v. United States Lines, Inc.*, 792 F.2d 19, 23 (2nd Cir. 1986).........................21, 22

*Satterfield v Simon & Schuster*, 569 F.3d 946 (9th Cir. 2009)...................................8, 10

*Stanard v. Nygren*, 658 F.3d 792, 797 (7th Cir. 2011) ....................................................18

*Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547, 194 L. Ed. 2d 635 (2016) ...........3, 13, 14

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 127 S. Ct. 2499, 2509, 168 L. Ed. 2d 179 (2007)........................................................................................................17

*Van Patten v. Vertical Fitness Group*, 847 F. 3d 1037, 1042-1043 (9th Cir. 2017) ...............................................................................3, 13, 14, 15, 16

**Federal Statutes, Regulations & Rules**

47 U.S. § 227…………………………………………………………………………1,2

47 U.S. § 227(a)……………………………………………………………….....9, 12, 13

47 USC § 227(a)(1)…………………………………………………………………....5, 7

 47 U.S. § 227(b)...…………………………………………………1, 7, 9, 10, 11, 12, 13, 14, 15

47 U.S. § 227(c)…………………………………………………………….....2, 12, 13, 14

47 U.S. § 227(c)(5)…………………………………………………………   2, 3, 12

47 CFR §64.1200 .....................................................................................................2, 3

47 CFR § 64.120(f)(1) ...........................................................................................5, 7, 9

FRCP Rule 8(a)(2)…………………………………………………..………...18, 19

FRCP 10(b)…………………………………………………………………………....19

FRCP 12(b)(6)…………………………………………………………….....3, 17

**State Statutes**

*California Business & Professions Code* § 17200 .......................................1, 3, 16, 21, 23

*California Business & Professions Code* § 17204 ............................................................15

*California Business & Professions Code* § 17535 ............................................................15

*California Business & Professions Code* § 17538.41 .................................................15, 16

*California Code of Civil Procedure* § 1021.5.......................................................1, 17, 23

# I. **INTRODUCTION**

Plaintiff, CRAIG CUNNINGHAM ("Cunningham") has filed his complaint against Defendant, STUDENT LOAN ADVOCAY GROUP ("SLAG"), seeking to recover in excess of $130,000 in statutory penalties under the private right of action provisions of 47 U.S. § 227, entitled "Restrictions On Use of Telephone Equipment" ("TCPA"), as well as seeking injunctive relief and recovery of "private attorney general" attorney's fees under pendent state law claims brought under *California Business & Professions Code* ("BPC") § 17200 and *Code of Civil Procedure* ("CCP") § 1021.5.  All claims relate to 42 text advertisements Cunningham allegedly received from SLAG on his cell phone in 2017.

Plaintiff is a serial TCPA litigator who has filed 40+ TCPA claims in various federal courts in the past 5+ years, most ending with an involuntary dismissal, or a settlement while a motion is pending (*see*, accompanying Request for Judicial Notice).  A stipulated extension of time in which to respond to the claim was ordered at the outset of the case for the parties to exchange information informally and to explore settlement options.  Those discussions broke down, and the case was not resolved.

In the interim, the long-awaited decision from the D.C. Court of Appeals, *ACA International v. FCC*, No. 15-1211, 2018 U.S. App. LEXIS 6535 (D.C. Cir. Mar. 16, 2018) ("*ACA v. FCC*"), was made final.  This *ACA v. FCC* decision once and for all answers the question of what type of device is defined as an Automatic Telephone Dialing System ("ATDS") whose use is regulated by the provisions of the TCPA, including TCPA Section 227(b)(3)'s private right of action provisions under which now Cunningham seeks relief.

This "motion to dismiss plaintiff's complaint and stay action pending disposition of vexatious litigant designation" seeks dismissal of Cunningham's Complaint dated 02/10/18 ("Complaint"), and **asks for a stay of all proceedings while this motion is pending**, and for this Court to make the determination of whether Cunningham is a vexatious litigant, and any protection should be afforded SLAG and other similarly situated defendants before Cunningham can pursue any TCPA claim in the Ninth Circuit, or at least this District Court.

1

STUDENT LOAN ADVOCACY GROUP'S MEMORANDUM OF POINTS & AUTHORITIES RE MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND STAY ACTION PENDING DISPOSTION OF VEXATIOUS LITIGANT DESIGNATION

18cv0329-GPC-JLB

## II.   ISSUES PRESENTED

### 1.  NO STANDING TO SUE FOR TCPA SECTION 227(b) CLAIMS.

The jurisdictional question presented is whether Cunningham has adequately plead standing to sue SLAG under any of the private right of action provisions of TCPA Section 227 (b)-(c).  Under the allegations made in the Complaint, there is no prohibited use by SLAG of an ATDS to <u>generate</u> the cell number properly alleged by Cunningham (see, *ACA v. FCC*, 2018 U.S. App. LEXIS at *8).  Instead, as alleged in the Complaint, SLAG obtained Cunningham's cell number for a fee from a third party lead company (Complaint, ¶29, at p. 7:12-13), a fatal defect in alleging what constitutes SLAG's improper use of an ATDS.

Alternatively, the allegations of the Complaint are so imprecise and indefinite on the issue of a chargeable violation of the TCPA that the Complaint does not contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " (*Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955 (2007)).

### 2.  NO STANDING TO SUE FOR TCPA SECTION 227(c) CLAIMS.

Cunningham's entire TCPA Section 227(c)(5) claim rests mainly on allegations made on information & belief, all based on the notion that the "do not call  list" ("DNC List") safeguards and other safeguards promulgated under 47 CFR §64.1200 were somehow violated by SLAG (Complaint, ¶¶14-19, at pp. 4:18-5:22).  However, Cunningham has failed to properly allege standing under TCPA Section 227(c) because he has failed to allege the requisite "injury in fact" and the other elements needed to establish standing (*see*, *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547, 194 L. Ed. 2d 635 (2016); *see also*, *Van Patten v. Vertical Fitness Group*, 847 F. 3d 1037, 1042-1043 (9th Cir. 2017).

Alternatively, the allegations of the Complaint are so imprecise and indefinite on the issue of a chargeable violation under TCPA Section 227(c)(5), be it based upon an alleged violation of safeguards promulgated under 47 CFR §64.1200, or otherwise, that under the

*Iqpal/Twombly* standard and under Rule 12(b)(6), the allegations of the Complaint fail to state a claim "that is plausible on its face" (*Iqbal*, 556 U.S. at 678).

### 3. NO PENDENT JURISDICTION-BPC § 17200 CLAIMS.

Similarly, in the absence of any proper allegations having been made in the Complaint of actual damages having been incurred under applicable state law as a result of Cunningham's receipt of advertising texts from SLAG, he lacks standing to sue for any claims based on BPC § 17200 or any other state law remedies asserted (*see, Van Patten*, 847 F. 3d at 1048-1049).

Alternatively, the allegations of the Complaint are so imprecise and indefinite on the issue of a chargeable violation of B&P Code § 17200 that under the *Iqpal/Twombly* standard and under Rule 12(b)(6), the allegations of the Complaint fail to state a claim "that is plausible on its face" (*Iqbal*, 556 U.S. at 678).

### 4. VEXATIOUS LITIGANT PROTECTION- STAY REQUESTED.

Cunningham is no stranger to TCPA litigation. Accompanying this motion is a Request for Judicial Notice detailing 40+ similar TCPA claims Cunningham has filed during the past 5+ years, with varying degrees of success, many resulting in <u>involuntary</u> dismissal, or a settlement while a motion is pending, demonstrating the pursuit of TCPA litigation for an improper purpose. His litigation strategy plainly is to file sham complaints to extort business owners into making quick cash settlements. Especially now that the *ACA v. FCC* decision plainly sets forth what sort of device is subject to the TCPA's regulation, Cunningham's continued use of the TCPA to attack telemarketers who reach him on his cell phone needs to be addressed because he is likely to continue to abuse the judicial process and harass other parties.

SLAG asks this court to intervene under its inherent equity power to provide injunctive relief against vexatious litigation, and to **stay these proceedings pending a determination of whether Cunningham indeed is a vexatious litigant**, even though in this matter he is represented (*see* e.g., *In re Hartford Textile Corp.,* 681 F.2d 895, 896 (2d

3

STUDENT LOAN ADVOCACY GROUP'S MEMORANDUM OF POINTS & AUTHORITIES RE MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND STAY ACTION PENDING DISPOSTION OF VEXATIOUS LITIGANT DESIGNATION

18cv0329-GPC-JLB

Cir. 1982); *Doran v. Vicorp Rests., Inc.,* 407 F. Supp. 2d 1115, 1118 (C.D. Cal. 2005)).   In that regard, similar to the issues put to the purported vexatious ADA litigant by the court in *Doran* (407 F. Supp. 2d 1117), before this or any other TCPA action can proceed further, Cunningham should be compelled to respond to the following 6 questions:

1. Of the cases filed by Cunningham in the past 5 years, how many have asserted TCPA violations?

2.  Of the cases identified in #1, in which cases was Cunningham *pro se*?

3. Of the cases identified in #1, which cases resulted in the entry of preliminary or final injunctive relief requiring a defendant's compliance with the TCPA?

4. Of the cases identified in #1, which cases proceeded to trial?

5. Of the cases identified in #1, which cases settled without resolution by trial or while a dispositive motion was pending?

6. Of the cases identified in #5, which settled cases resulted in a consent decree or other settlement obligation to bring the given defendant's telemarketing practices into compliance with the TCPA?

The responses to the foregoing should lead this Court to the inevitable conclusion that Cunningham is not some TCPA crusader to be lauded, but instead is a vexatious litigant whose serial litigation efforts should be curtailed by requiring an adequate pre-filing showing to be made to the trial court in advance of his serving a TCPA complaint.

## III.   STATEMENT OF FACTS

SLAG is a telemarketing firm that uses an outside SMS (short message service) vendor to transmit marketing texts about its student loan adjusting services to consumers whose cell phone numbers are obtained for a fee from third party lead sources.

Cunningham allegedly was one of those targeted consumers, who allegedly was contacted by SLAG on his cell phone 42 times over a period of time from 02/02/17 through 12/14/17 (Complaint, ¶ 50, at pp. 9-20).  Cunningham alleges that SLAG "uses equipment that has the capacity to store or produce random or sequential telephone numbers to be

4

STUDENT LOAN ADVOCACY GROUP'S MEMORANDUM OF POINTS & AUTHORITIES RE MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND STAY ACTION PENDING DISPOSTION OF VEXATIOUS LITIGANT DESIGNATION

18cv0329-GPC-JLB

called…" (*Id*, ¶ 26, at p. 7:4-7).  <u>He makes no requisite allegations that SLAG uses an</u> <u>ATDS device to generate the numbers called, or that such a device was used to both</u> <u>generate and dial his cell number.</u>

Instead, Cunningham readily admits that SLAG obtained his cell number for a fee from a third party lead source (*Id*,  ¶29, at p. 7:10-11), not from a ATDS device used by SLAG that generated Cunningham's number using the requisite "random or sequential number generator" as defined by TCPA Section 227(a)(1) or by 47 CFR § 64.120(f)(1).

Further, as alleged by Cunningham, at least the first two texts sent by SLAG contained the following "opt out" provision:

"Reply HELP for help, or STOP to cancel"

(*Id*, ¶ 51, at pp. 9:25 and 10:12).

Notably lacking from the allegations of the Complaint are any allegations that Cunningham ever opted out of the SLAG text contacts, that he ever had his name placed on a federal DNC List, or that he ever asked SLAG to place his name on their internal DNC List, or to otherwise stop contacting him on his cell phone.

Also, with regard to any "actual damages" sustained as the result of his receipt of these advertising texts sent by SLAG, Cunningham has only alleged as follows:

"Mr. Cunningham has a limited data plan.  Incoming text messages chip away

at his monthly allotment."

(*Id*, ¶ 30, at p. 7:14-15).

Finally, the only direct contact allegedly initiated by Cunningham to SLAG is his allegedly sending a letter to SLAG at some non-disclosed time period, in which Cunningham allegedly asked to be sent SLAG's protocols for their internal DNC List, to which SLAG did not reply (*Id*, ¶¶ 45-49, at p. 9:2-12).  That supposedly all-important letter is not attached as an exhibit to the Complaint, its specific contents are unknown, as are its method and date of supposed delivery to SLAG.

/ / /

STUDENT LOAN ADVOCACY GROUP'S MEMORANDUM OF POINTS & AUTHORITIES RE MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND STAY ACTION PENDING DISPOSTION OF VEXATIOUS LITIGANT DESIGNATION

# IV.   LEGAL ARGUMENT

## A.

### TCPA'S PROHIBITIONS AGAINST USE OF AN ATDS TO SEND A TEXT TO A CELL PHONE DO NOT INCLUDE TELEMARKETERS WHOSE SOURCE OF THE NUMBER CALLED IS AN OUTSIDE LEAD SOURCE

The proposition advanced by this motion is that under the recent *ACA v. FCC* decision, one that provides a clear definition of what type of ATDS equipment is subject to the provisions of the TCPA, because it is undisputed that as alleged in the Complaint, SLAG used a third party lead source to <u>generate</u> Cunningham's number, a number that in turn was used by SLAG's third-party SMS vendor to send Cunningham SLAG's advertising texts, without more (for example, Cunningham being on a DNC List when repeated SLAG texts were sent), then SLAG's advertising activity constitutes protected commercial speech, and is not otherwise subject to the provisions of the TCPA.

Also, the only logical inference to deduce from his allegation that his number came from a paid third party lead source is that Cunningham's number was <u>not</u> generated by SLAG using the requisite "random or sequential number generator," an outcome that is fatal to the definition of "use of an ATDS" as that device is now defined by the court in *ACA v. FCC.* <u>Cunningham is never going to be able to allege new and inconsistent facts to overcome the fatal effect of this already alleged fact</u> that his number came from a paid third party lead source, and therefore was <u>not</u> generated from SLAG's ATDS.

TCPA Section 227(b), entitled "Restrictions on Use of Automated Telephone Equipment," provides consumers protection against receiving solicitations on their land line or cellphone number when their number is both <u>generated and dialed</u> by an ATDS device. Section 227(b)(3) in turn provides a consumer a private right of action against an offending telemarketer and provides for a statutory penalty of $500 per call or text, or up to $1,500 each call or text if it can be demonstrated the telemarketer intentionally violated the prohibitions of Section 227(b).

6

STUDENT LOAN ADVOCACY GROUP'S MEMORANDUM OF POINTS & AUTHORITIES RE MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND STAY ACTION PENDING DISPOSTION OF VEXATIOUS LITIGANT DESIGNATION

18cv0329-GPC-JLB

Under the FCC's definition of an ATDS, as set forth in the TCPA, as well as the relevant/parallel CFR provisions, an "automatic telephone dialing system" or ATDS and an "autodialer" are synonymous terms, and the device is <u>jointly</u> defined as follows:

> "The terms ***automatic telephone dialing system <u>and</u> autodialer*** mean equipment which has the ***<u>capacity</u>*** to [1] ***store or produce telephone numbers to be called <u>using a random or sequential number generator</u>*** and [2] ***to dial such numbers*** [emphasis added]."

47 CFR § 64.120(f)(1), see also, 47 USC § 227(a)(1).

According to the earlier/pre-*ACA v. FCC* interpretation of what sort of device was an ATDS subject to TCPA/FCC regulation, an ATDS was essentially "any telephone equipment that has the ***capacity*** to dial numbers without human intervention [emphasis added]" (*see, In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Report and Order, 18 FCC Rcd. 14014, 14091 (2003) ("2003 TCPA Ruling")). This FCC definition proved to be an extremely broad standard under which if the device could even <u>potentially</u> be configured or programmed to auto dial, then it was an ATDS subject to the provisions of the TCPA and the FCC's oversight.

Between 2003 and 2015, the FCC made numerous rulings regarding the types of equipment that had the functions of an ATDS, chief of which was the "predictive dialer," a device described by the FCC as equipment that "when paired with certain software, has the ***<u>capacity</u>*** to store or produce numbers and dial those numbers at random, in sequential order, or from a database [emphasis added]." (*Ibid.*)

However, missing from the FCC's 2003 TCPA Ruling was any mention of making calls "using a random or sequential number generator," even though the Commission maintained that this was an essential function of an ATDS. *Ibid.* The FCC reaffirmed its rulings in 2008, and then again in 2015 (*see, In Re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Request of ACA International for Clarification and Declaratory Ruling, CG Docket No. 02-278, FCC Docket No. 07-232, 23

7

STUDENT LOAN ADVOCACY GROUP'S MEMORANDUM OF POINTS & AUTHORITIES RE MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND STAY ACTION PENDING DISPOSTION OF VEXATIOUS LITIGANT DESIGNATION

FCC Rcd. 559 (2008); *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. 7961, 7970 (2015)).

Presumably, this broad definition of "capacity" in the context of an ATDS device subject to TCPA's regulation came into use because the FCC sought to anticipate and pre-empt loopholes by TCPA defendants who could simply flip a switch on their phone systems and say "it never happened" in order to avoid liability.  Courts subsequently interpreting the definition of an ATDS under the statue typically followed the FCC's lead.  For example, in *Satterfield v Simon & Schuster*, 569 F.3d 946 (9th Cir. 2009), the court followed the FCC's broad definition of an ATDS, ruling as follows:

> "When evaluating the issue of whether equipment is an ATDS, the statute's clear language mandates that the focus must be on whether the equipment has the capacity 'to store or produce telephone numbers to be called, using a random or sequential number generator.' ***Accordingly, a system need not actually store, produce, or call randomly or sequentially generated telephone numbers, it need only have the capacity to do it***."

*Satterfield*, 569 F.3d at 951 [emphasis added].

More recently, several district and circuit courts have bucked the trend, including this district court, and these courts held faithfully to the text of the TCPA statute in finding that a "predictive dialer" is <u>not</u> an ATDS <u>because it does not have the capacity to generate random or sequential numbers to be called</u> (see, *Marks v. Crunch San Diego, LLC*, 55 F. Supp. 3d 1288, 1291 (S.D. Cal. 2014); see also *Dominguez v. Yahoo, Inc*., 629 F. App'x 369, 372-373 (3d Cir. 2015) ["we agree with the District Court's definition of 'random or sequential' number generation (i.e., the phrase refers to the numbers themselves rather than the manner in which they are dialed) and its holding that the statutory definition does in fact include such a requirement"].

Whatever the underlying rationale previously used for this overly broad definition of an ATDS subject to regulation under the TCPA, <u>this overly-broad definition of an "ATDS"</u>

STUDENT LOAN ADVOCACY GROUP'S MEMORANDUM OF POINTS & AUTHORITIES RE MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND STAY ACTION PENDING DISPOSTION OF VEXATIOUS LITIGANT DESIGNATION

has now been stood on end.  In *ACA v. FCC*, the D.C. Court of Appeals addressed four specific issues, one of which is fundamental to the federal subject matter jurisdiction over the claims asserted by Cunningham in this matter:

> "The challenges encompass four issues addressed by the agency's order: (i) ***which sorts of automated dialing equipment are subject to the TCPA's restrictions on unconsented calls***; … [emphasis added]"

*ACA v. FCC,* 2018 U.S. App. LEXIS at *4.

The *ACA v. FFC* court's decision rests specifically on limiting the definition of an ATDS as set forth under TCPA Section 227(a) (*Id*, 2018 U.S. App. LEXIS at (30).)  That same definition of an ATDS found in Section 227(a) is substantially identical to the definition stated above that is derived from 47 CFR § 64.120(f)(1), and the terms ATDS and "autodialer" are terms that are uniformly used throughout the TCPA statute and the enforcing regulations promulgated by the FCC under the CFR.

However, the issue of the prohibited use of an ATDS device to place texts and calls to cell phones specifically was <u>not</u> addressed by the court in *ACA v. FCC* because that prohibition comes from TCPA Section 227(b), a different section of the TCPA that was analyzed by the court, which was TCPA Section 227(a):

> "Petitioners have raised no challenge to the Commission's understanding of the second provision—i.e., to the agency's interpretation of what it means to 'make any call using any' ATDS."

*Id*, 2018 U.S. App. LEXIS at *30.

Nonetheless, the court in *ACA v. FCC* goes on to urge the FCC to promulgate new rules with regard to TCPA Section 227(b), stating as follows:

> "We nonetheless note the issue in light of its potential interplay with the distinct challenges petitioners do raise. The agency could choose to revisit the issue in a future rulemaking or declaratory order, and a party might then raise the issue on judicial review."

9

STUDENT LOAN ADVOCACY GROUP'S MEMORANDUM OF POINTS & AUTHORITIES RE MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND STAY ACTION PENDING DISPOSTION OF VEXATIOUS LITIGANT DESIGNATION

18cv0329-GPC-JLB

*Id.*

As noted by the *ACA v. FCC* court, the second operative section of the TCPA [Section 227(b)], states as follows:

> "The second provision then incorporates that definition [of an ATDS device] in setting out the scope of the prohibition: 'It shall be unlawful for any person . . . to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system . . . to any telephone number assigned to a . . . cellular telephone service [.]' *Id.* § 227(b)(1)(A)(iii) (emphases added)."

*Id.*, at \*29.

***In that regard, this Complaint and the underlying facts and circumstances presented in this matter present the ideal case with which to test the ACA v. FCC decision, and apply its definition of an ATDS to the facts as alleged in the Complaint.***

Without commenting on *Satterfield* or other prior case law applying the earlier FCC standards to interpret the TCPA definition of an ATDS, the D.C. Court of Appeals in *ACA v. FCC* specifically ruled that the FCC's interpretation of "capacity" was overly broad, and it struck it down (*Id*, 2018 U.S. App. LEXIS at \*29).   As noted above, while the *ACA v. FCC* court did not specifically disturb any current FCC rulings against using an ATDS to send marketing texts [i.e., TCPA Section 227(b)], the court made it very plain that the FCC's "functionality" standard, previously used by the FCC to help define the scope of a device's "capacity" and in turn the type of ATDS equipment whose use was prohibited under TCPA Section 227(b), was <u>incorrect</u>. *Id*., 2018 U.S. App. LEXIS at \*29.

The logical outcome of the D.C. Court of Appeals ruling in *ACA v. FCC* when applied to the facts alleged in the Complaint is that if a text sender like SLAG does not use a device to both (1) generate the cell number where texts are being sent using a "random or sequential number generator," and (2) to send the text, then that device used by SLAG is not an ATDS whose use is regulated by the TCPA.

This conclusion is reached because the court in *ACA v. FCC* ruled very narrowly that in the context of the FCC's definition of "capacity" an ATDS device that now comes within the TCPA's restrictions needed to have "actual ability" to generate the random or sequential numbers used. *Id*.

It follows that the "potential ability" of the device used to send a text to generate random or sequential numbers <u>now is of no consequence *if that function was **not** actually used to generate the cell number called*</u>. That same general rationale and outcome was expressed by this District Court in *Marks* (55 F. Supp. 3d at 1291.)  Therefore, in this instance, based on Cunningham's current allegations that his cell number was purchased by SLAG from a third party "lead generator specializing in student loan marketing" (Complaint, ¶29, at p. 7:12-13), Cunningham has not and cannot allege that the device used by SLAG to contact his cell phone was also used to "generate" his number.

Further, as noted above, under the FCC's working definition of an ATDS under the FCC's 2003 TCPA Ruling and subsequent rulings, <u>now struck down</u> by the court in *ACA v. FCC*, the equipment subject to the TCPA's regulation and penalties only needed to have the <u>capacity</u> to generate random numbers, including "potential abilities" and "future possibilities," and actual use of that random or sequential number generation function was of no impact (*Id.*, 2018 U.S. App. LEXIS at *12-13).  As a result, the sender's use of pre-set lists to auto-dial when making calls to consumers (such as the case with SLAG) readily fell within the FCC's now stricken definition of ATDS (*Id.*).  **Not any longer**.

Therefore, the plain implication of the *ACA v. FCC* decision is that SLAG's sending a text soliciting a consumer like Cunningham whose number came from a paid for list of leads generated by a third party lead source, and not generated sequentially or randomly by the device that is being used to send the text, <u>is no longer activity that falls within the first conjunctive leg of Section 227(a)'s ATDS definition,</u> which is a device that "stores or produces telephone numbers to be called ***using a random or sequential number generator***."

11

STUDENT LOAN ADVOCACY GROUP'S MEMORANDUM OF POINTS & AUTHORITIES RE MOTION TO
DISMISS PLAINTIFF'S COMPLAINT AND STAY ACTION PENDING DISPOSTION OF VEXATIOUS LITIGANT
DESIGNATION

18cv0329-GPC-JLB

1
2
3
4
5
6
7
8
9
10

This foregoing outcome takes a slightly different tack, but in essence is in accord with the earlier decisions reached by this District Court in *Marks* and by the Third Circuit in *Dominguez* [both finding no standing to sue because the method of dialing consumers used by the given telemarketer was outside the scope of TCPA Section 227(b) (*see*, *Marks*, 55 F. Supp. 3d at 1291; *Dominguez,* 629 F. App'x at 372-373)].  SLAG therefore requests that this court find that SLAG's texts sent to Cunningham do not fall within TCPA Section 227(b)'s current definition of a prohibited use of an ATDS device because the device allegedly used by SLAG to send texts was not also used to generate the cell number that was messaged.  Accordingly, Cunningham has not standing to sue under TCPA Section 227(b)(3), and those claims should be dismissed without leave to amend.

11

**B.**

12
13

**NO STANDING TO SUE UNDER TCPA SAFEGUARDS**

**AGAINST CONTACTING DO NOT CALL LIST CONSUMERS**

14
15
16
17
18
19
20

A plain reading of TCPA Section 227(c) entitled "Protection of Subscriber Privacy Rights" protects telephone subscribers' whose cellphone or land line number is registered on the national "Do-Not-Call Registry" list "DNC List" or on a private company's DNC List, and who subsequently receive a telemarketing call or text.  Under current FCC regulations, and under the private right of action found in Section 227(c)(5), if more than one such contact is made by a telemarketer to such a protected number within a 12-month period, the consumer can sue that telemarketer for all such calls or texts.

21
22
23
24
25
26

Moreover, at least one Circuit Court has held that damages under Section 227(c) may be stacked on top of the consumer's damages available under the Section 227(b) prohibition covering "calls to cell phones by an ATDS." This doubling up means the aggrieved consumer who has sought protection under a DNC List potentially can recover up to $3,000 per non-consensual contact by a given telemarketer if it can be demonstrated that telemarketer intentionally violated the TCPA prohibitions against contacting a cell phone

27
28

12

STUDENT LOAN ADVOCACY GROUP'S MEMORANDUM OF POINTS & AUTHORITIES RE MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND STAY ACTION PENDING DISPOSTION OF VEXATIOUS LITIGANT DESIGNATION

18cv0329-GPC-JLB

1  (1) using an ATDS device regulated by Section 227(b) and (2) that is registered on a DNC

2  List (*Charvat v NMP, LLC* (6th Cir. 2011) 656 F. 3d 440, 447-448).

3         A tidy sum indeed if Cunningham could indeed properly allege and eventually prove

4  such a double violation.  However, in addition to his lacking standing to sue under TCPA

5  Section 227(b), Cunningham also has failed to properly allege standing to sue under TCPA

6  Section 227(c) because he has failed to allege the requisite "injury in fact" and the other

7  elements needed to establish standing required by the court in *Spokeo* (136 S. Ct. at 1547).

8         In that regard, in *Van Patten v. Vertical Fitness Group*, 847 F. 3d 1037 (9th Cir.

9  2017), a TCPA case brought under Section 227(a)-(b) [**not under Section 227(c)**], the Ninth

10  Circuit applied the rationale of *Spokeo,* and ruled that in order to satisfy standing under

11  Article III of the U.S. Constitution, a plaintiff "must have (1) suffered an injury in fact, (2)

12  that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to

13  be redressed by a favorable judicial decision" (*Van Patten*, 847 F. 3d at 1042; citing *Spokeo*,

14  136 S. Ct. at 1547).

15        Further citing *Spokeo* (136 S.Ct. at 1548), the court in *Van Patten* found that a

16  plaintiff establishes an "injury in fact" if he or she suffered "'an invasion of a legally

17  protected interest' that is 'concrete and particularized' and 'actual or imminent, not

18  conjectural or hypothetical'", and restated the general rule that "Article III standing requires

19  a concrete injury even in the context of a statutory violation," and that a plaintiff does not

20  "automatically satisfy the injury-in-fact requirement whenever a statute grants a person a

21  statutory right and purports to authorize that person to sue to vindicate that right" (*Id,* 847

22  F. 3d at 1043).  The Ninth Circuit concluded that, unlike the outcome in *Spokeo*, where a

23  violation of a procedural requirement minimizing reporting inaccuracy might not cause

24  actual harm or present any material risk of harm, "the telemarketing text messages at issue

25  here, absent consent, presented the precise harm and infringed the same privacy interests

26  Congress sought to protect in enacting the TCPA" (*Ibid*).

27  / / /

28

STUDENT LOAN ADVOCACY GROUP'S MEMORANDUM OF POINTS & AUTHORITIES RE MOTION TO
DISMISS PLAINTIFF'S COMPLAINT AND STAY ACTION PENDING DISPOSTION OF VEXATIOUS LITIGANT
DESIGNATION

Although the Ninth Circuit in *Van Patten* ruled that the plaintiff in the underlying case indeed had demonstrated standing to sue under TCPA Section 227(b)(3) because the requisite injury in fact had been demonstrated, when using the same rationale applied by the Ninth Circuit in *Van Patten*, then the allegations of the Complaint pleading a violation of TCPA Section 227(c) must fail for lack of standing be no "actual injury" is alleged.

In this instance, Cunningham fails to allege in his Complaint how SLAG's actions relating to alleged failure to follow safeguards caused him any harm.  He does not allege that he sought to opt out of any texts sent by SLAG, that he ever asked to be placed on any federal DNC List, or that he ever asked SLAG to be placed on its internal DNC List. Instead, generalized allegations are made, all under information & belief, that the safeguards of the CFR were somehow violated, with no allegation that there ever was any violation of the DNC List protocols or other CFR safeguards that led to SLAG sending him non-consensual advertising texts (Complaint, ¶¶ 45-49, at p. 9:2-12; ¶¶ 58, at p. 21:5-15).

Accordingly, based on the current allegations of the Complaint, Cunningham's Section 227(c) claim fails the first two legs of the 3-part test of standing applied by the Ninth Circuit in *Van Patten* because he was not registered on a DNC List at the time of his receipt of the texts.  Therefore, by definition, Cunningham has not (1) suffered an injury in fact (2) that is fairly traceable to the challenged conduct of the defendant.

Where indeed is the causal nexus presented between SLAG's alleged violation of the safeguards required under the CFR and Cunningham's receipt of texts from SLAG?  His injury may well be receipt of an unwanted text, but there is no tie-in between receipt of a text sent by SLAG and SLAG's alleged violation of any CFR safeguards.  That is because Cunningham's receipt of the text is <u>not</u> "fairly traceable to the challenged conduct of the defendant," as required by *Spokeo*.  For that reason Cunningham has no standing to sue under TCPA Section 227(c), and those claims should be <u>dismissed without leave to amend</u>.

///

///

STUDENT LOAN ADVOCACY GROUP'S MEMORANDUM OF POINTS & AUTHORITIES RE MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND STAY ACTION PENDING DISPOSITON OF VEXATIOUS LITIGANT DESIGNATION

## C.

### NO STANDING TO SUE UNDER THE PENDENT STATE LAW CLAIMS

In *Van Patten,* the Ninth Circuit also addressed California statutory claims paralleling the alleged TCPA Section 227(b) claims made in that matter, under which plaintiff alleged violations of BPC § 17200 and BPC § 17538.41 [the latter section prohibits entities conducting business in California from transmitting, or causing to be transmitted, a text message advertisement to mobile telephones]. The Ninth Circuit <u>rejected</u> these allegations, holding that under applicable California state law, the plaintiff did not have standing to bring either of these statutory claims (847 F. 3d. at 1049).

In making that determination, the *Van Patten* court noted that the plaintiff's California claims could only be prosecuted by a person who has suffered an "injury in fact" and has actually lost money or property as a result of the unfair competition (*Id*, at 1048-1049; *see also*, Bus. & Prof. Code §§ 17204 & 17535). <u>*That same outcome should apply in this case involving Cunningham's state law claims asserted against SLAG*</u>.

According to the Ninth Circuit, this state law economic injury requirement is "more restrictive than federal injury in fact" because it encompasses fewer kinds of injuries (*Id*, at 1049, relying on *Kwikset Corp. v. Superior Court*, (2011) 51 Cal. 4th 310, 322-323).

Although the plaintiff in *Van Patten* had argued that he was charged for the text messages sent by the defendant companies, the Court noted the evidence was that the plaintiff had an unlimited text messaging plan, in which regardless of how many text messages the consumer received, he still paid the same monthly fee (*Id*, at 1049). The plaintiff nevertheless contended that he was still charged for the texts because every text message he received ultimately affected his cellular telephone provider's bundled pricing, but the Court disagreed, stating the argument was hypothetical and conjectural, and because plaintiff had failed to demonstrate that any price increase in text messaging was caused by the companies' conduct, he did not show and could not demonstrate any economic injury (*Id*). As a result, the Ninth Circuit held plaintiff could <u>not</u> prove that the text messages had

15

STUDENT LOAN ADVOCACY GROUP'S MEMORANDUM OF POINTS & AUTHORITIES RE MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND STAY ACTION PENDING DISPOSTION OF VEXATIOUS LITIGANT DESIGNATION

18cv0329-GPC-JLB

caused him to suffer the requisite economic injury that was "concrete and particularized and actual or imminent," and ruled that plaintiff lacked standing to bring his claims under BPC §§ 17200 & 17538.41 (*Id*).

In this instance, as alleged in the Complaint, the texts sent by SLAG <u>used up only a portion of Cunningham's monthly pre-paid data plan</u>, but did not allegedly result Cunningham paying any extra fees or other actual damages.   All that is alleged is Cunningham has "a limited data plan" and the texts "chip away at his monthly allotment." (Complaint, ¶30, at p. 7:14-15).   Therefore, he has failed to allege that he sustained the requisite economic injury required under state law, one that was "concrete and particularized and actual or imminent."   The alleged injury that the non-consensual texts sent by SLAG "chip away" at his data plan simply is too speculative.   Accordingly, Cunningham has not and cannot allege he has sustained any "actual injury," and he therefore has no standing to pursue state law claims under BPC §17200 or any right to recover "private attorney general" attorney's fees under CCP § 1021.5.   As a result, all of Cunningham's state law claims should be dismissed <u>without leave to amend</u>.

## D.

## PLAINTIFF'S TCPA & STATE LAW CLAIMS
## ARE SUBSTANTIVELY FLAWED AND
## FAIL TO STATE A CLAIM AGAINST DEFENDANT

A motion to dismiss will be granted where the plaintiff fails to state a claim upon which relief can be granted (FRCP 12(b)(6)). To survive such a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'" (*Ashcroft*, 556 U.S. at 678).   Further, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations ... a plaintiffs obligation to provide the 'grounds' of his 'entitle[ment]' to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do" (*Twombly*, 550 U.S. at 555). "[O]n a motion to dismiss, courts are not bound

to accept as true a legal conclusion couched as a factual allegation.... Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Id.* (internal quotations and citations omitted). The pleading must contain something ... more than...a statement of facts that merely creates a suspicion [of] a legally cognizable right of action" (*Id.).*

Dismissal is warranted where the complaint lacks a cognizable legal theory or where the complaint presents a cognizable legal theory yet fails to plead essential facts under that theory (*Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir.1984); *see also, Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 127 S. Ct. 2499, 2509, 168 L. Ed. 2d 179 (2007)).

Especially in complex commercial cases which consume significant resources of the parties in the judicial system, the pleader must allege "enough facts to state a claim to relief that is plausible on its face" (*Twombly*, 550 U.S. at 570). Simply stated, it is incumbent upon the pleader to cross the "line between the conclusory and the factual" and "between the factually neutral and the factually suggestive" (*Id.*, 550 U.S. at 557 n.5). Unless the pleader has "nudged" the claims "across the line from conceivable to plausible," the complaint must be dismissed (*Id.,* at 570; *Hanley v. Green Tree Servicing, Inc.,* 934 F. Supp. 2d 977, 981 (N.D. Ill. 2013) [dismissing a TCPA claim applying the plausibility standard]).

A pleading such as Cunningham's Complaint that contains no more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" (all stated under information & belief), or that fails to allege "more than the mere possibility of misconduct," also fails to meet Fed. R. Civ. P. 8's liberal pleading standard (*Iqbal*, 556 U.S. at 678-679). Assessing whether a complaint meets the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense" (*Id.,* at 679).

///

STUDENT LOAN ADVOCACY GROUP'S MEMORANDUM OF POINTS & AUTHORITIES RE MOTION TO
DISMISS PLAINTIFF'S COMPLAINT AND STAY ACTION PENDING DISPOSTION OF VEXATIOUS LITIGANT
DESIGNATION

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

There also are strong policy and fairness considerations supporting the "plausibility" pleading standard (*see*, *Twombly*, 550 U.S. at 559-60). In commercial litigation, the "sprawling, costly, and hugely time-consuming undertaking" of discovery "will push cost-conscious defendants to settle even anemic cases" (*Id,* at 559, 560 n.6). Without adherence to the "plausibility standard," there is no assurance that "a claim just shy of plausible entitlement to relief" would "be weeded out early in the discovery process through 'careful case management'" procedures (*Id.*, at 559).

Furthermore, in order to satisfy the plausibility standard under FRCP Rule 8(a)(2), the Complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief" (*Iqbal,* 556 U.S. at 678). To state a claim that will survive a motion to dismiss "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation" (*Ibid*).   In this same vein, pleadings that "present vague, confusing, and conclusory articulation of the factual and legal basis for the claim . . . frustrate Rule 8's objective" and should be dismissed (*Stanard v. Nygren*, 658 F.3d 792, 797 (7th Cir. 2011); *see also, Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 946-47 (7th Cir. 2013)).

In his Complaint, in one of Cunningham's rare factual averments that are <u>not</u> based solely on information & belief, he alleges that he delivered a letter to SLAG at some unstated point in time, using an unknown method of delivery, asking to be provided with SLAG's "do-not-call policy," and that supposed violation, as well as other claims of SLAG's alleged failure to provide consumer safeguards required under the CFR that are alleged solely on information and belief, give rise to statutory penalties in excess of $63,000 (Complaint, ¶¶ 45-49, at p. 9:2-12; ¶¶ 59-60, at p. 21:15-19).

Despite being involved as a serial litigator in TCPA litigation for the past 5+ years, having filed 40+ TCPA claims, mainly in the Sixth Circuit, Cunningham has never bothered to register his cell phone number under the government's national DNC List, nor on SLPC DNC List, nor apparently on the DNC List of any of the other 40+ targets of his ongoing TCPA crusade (*see*, section E, below, and accompanying Request for Judicial Notice).  One

18

STUDENT LOAN ADVOCACY GROUP'S MEMORANDUM OF POINTS & AUTHORITIES RE MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND STAY ACTION PENDING DISPOSTION OF VEXATIOUS LITIGANT DESIGNATION

can readily speculate how Cunningham's cell phone number has shown up on the call sheets of so many telemarketers over the past few years, but that is not an issue for this motion, other than perhaps in the context of this court's requested disposition of Cunningham being a vexatious litigant.

In any case, Cunningham's broad sweeping allegations of TCPA violations and state law claims, all mainly based on his "information & belief," violate the pleading standards in FRCP Rules 8(a)(2) and 10(b), and fail to provide SLAG the requisite "fair notice" and "grounds" upon which the claim rests (*Twombly*, 550 U.S. at 555 n. 3). Therefore, any of Cunningham's claims that survive the motion to dismiss based on his lack of standing to sue all suffer from these same fatal pleading defects, and the motion to dismiss should be granted on these alternative grounds.

## E.

## VEXATIOUS LITIGANT PROTECTION SHOULD BE AFFORDED SLAG, AND A STAY SHOULD BE PUT IN PLACE UNTIL DISPOSITION OF THAT ISSUE IS RESOLVED

Congress enacted the TCPA over 25 years ago, in response to an increasing amount of consumer complaints regarding the practices and frequency of phone calls made by telemarketers and debt collectors. Congress was concerned with balancing the privacy interests of telephone subscribers who were frequently harassed and inconvenienced by incessant calling from telemarketers and debt collectors with the interests of facilitating interstate commerce. Congress found that unwanted automated calls were a "nuisance and an invasion of privacy, regardless of the type of call." Banning such calls was "the only effective means of protecting telephone consumers from this nuisance and privacy invasion." (*see*, Pub. L. No. 102 -243, §§ 2 (10-13)(Dec. 20, 1991) codified at 47 U.S.C. § 227). Due to the potential $1,500/$3,000 per call damages presented, liability exposure in single actions can be high, and claims in a single class action can result in tens of millions of dollars. In large part due to recent aggressive litigation practices by the class action

19

STUDENT LOAN ADVOCACY GROUP'S MEMORANDUM OF POINTS & AUTHORITIES RE MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND STAY ACTION PENDING DISPOSTION OF VEXATIOUS LITIGANT DESIGNATION

18cv0329-GPC-JLB

plaintiffs' bar, a marked increase in TCPA litigation has arisen in the past few years.  One study estimates that in 2012 alone there was a 63% increase in filings nationwide (*WebRecon*, 2012).  As a result, the TCPA has become fertile ground for nuisance lawsuits because TCPA claimants and their attorneys are often rewarded with quick settlements, even in cases with no merit, simply due to the high cost of litigation and the uncertainty of outcome, especially in instances of purely technical violations, and the potential dire financial consequences presented.

### 1.  Monetary Rewards Are Improperly Being Sought.

It is apparent from Plaintiff's 40+ TCPA actions filed in the past 5+ years that he is not genuinely interested in making businesses TCPA compliant, but instead is seeking speedy settlements from small businesses threatened by the potential costs of protracted litigation. If plaintiff was really interested in obtaining TCPA compliance, he would not be so quick to file a complaint in federal court. "A true attorney general would not immediately sue, but would give a business an opportunity to fix the problem." (*Doran v. Del Taco, Inc*., 373 F.Supp.2d 1028, 1034 (C.D. Cal. 2005).

Cunningham, as a *pro se* plaintiff, and also as a represented plaintiff (as in this instance), in his role as a serial TCPA litigator has filed over 40 nearly identical TCPA claims against telemarketers and advertisers as part of an apparent scheme of systematic extortion. An examination of the facts of the claims and their outcomes reveals the clear intent to harass defendants and the Court, given the repetitious nature of the same fact patterns and injuries, as well as the high number of involuntary dismissals, after untold amounts of wasted resources expended by the courts and the opposing parties.

Plaintiff and his counsel revealed their financial motives by also raising the BPC § 17200 state-law "private attorney general claims" in addition to the TCPA claims. Especially now that the definition of an ATDS is subject to the TCPA's regulations has been so narrowly defined, if plaintiff and plaintiff's attorney were truly interested in TCPA compliance, they would not jump so readily at filing TCPA claims.

### 2.    This Court Has Authority to Issue Pre-Filing Order and Sanctions

The District Court has the inherent power to levy sanctions in response to abusive litigation practices (*De Long v. Hennessey*, 912 F.2d 1144, 1147 (9th Cir. 1990)).  Such orders, however, are "extraordinary remed[ies] that should be narrowly tailored and rarely used." (*Moy v. United States*, 906 F.2d 467, 470 (9th Cir. 1990)). A vexatious litigant order must comply with the following: (1) a plaintiff must be given an opportunity to oppose entry of the order; (2) the district court must indicate what court filings support issuance of the order; (3) the district court must find that the filings were frivolous or harassing; and (4) the order must be narrowly tailored (*DeLong*, 912 F.2d at 1147-48).  Once the court finds a vexatious litigant order is proper, it must be narrowly tailored so as "to prevent infringement on the litigator's right of access to the courts" (*Id*. at 1148).

Based on Cunningham's serial TCPA litigation history of pursuing excessive compensatory damages and securing quick settlements, regardless of the underlying facts, the Court can and should conclude that an exercise of its inherent power is needed to curtail his aggressive TCPA litigation practice and to prevent his further abuse of the courts and of other litigants. A pre-filing order is warranted declaring Plaintiff to be a vexatious litigant and requiring him to obtain the trial court's leave before filing TCPA claims either as a *pro se* or as a represented party.

### 3.  Plaintiff's Conduct Meets The Federal Standard for "Vexatious Litigant"

In deciding whether or not to declare a plaintiff a vexatious litigant, "[u]ltimately, the question the court must answer is whether a litigant who has a history of vexatious litigation is likely to continue to abuse the judicial process and harass other parties." (*Safir v. United States Lines, Inc.*, 792 F.2d 19, 23 (2nd Cir. 1986)).  The *Safir* test for whether a suit is frivolous or harassing examines plaintiff's history of litigation, plaintiff's motive, and needless burden imposed on the parties and the question of whether other sanctions are adequate (*Id*., 792 F.2d at 24).

STUDENT LOAN ADVOCACY GROUP'S MEMORANDUM OF POINTS & AUTHORITIES RE MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND STAY ACTION PENDING DISPOSTION OF VEXATIOUS LITIGANT DESIGNATION

The following is an analysis pursuant to the *Safir* test of whether plaintiff's suit is frivolous or harassing, which SLAG urges this court to adopt in making its determination:

**a. Plaintiff's History of TCPA Claims & In Particular Whether They Entailed Vexatious, Harassing or Duplicative Lawsuits**.  Cunningham cannot dispute that he has filed 40+ TCPA lawsuits in the Sixth Circuit and other regions of the country, and that this case may well be his first venture into the Ninth Circuit.   However, numerosity alone is insufficient to show that a lawsuit is frivolous or harassing (*De Long*, 912 F.2d at 1148). The Court must also examine the content of filings, since mere litigiousness is insufficient although the Court considers it as indicative of an intent to harass (*Ibid*).

Based on the *Lexis* research conducted by defense counsel, it is believed that the Complaint in this matter is substantially identical to the 40+ other TCPA complaints filed by Cunningham and his attorneys over the past 5 years. Plaintiff repeats the same fact pattern and injuries, which if not vexatious, is harassing at the least. If the Court does not impede plaintiff's foray into the Ninth Circuit, Cunningham no doubt will wear out his welcome in this Circuit, the same as he has done in others to date.

**b. Plaintiff's Improper Motive in Pursuing TCPA Claims.**  Cunningham no doubt will argue that his motivation was to obtain injunctive relief against further TCPA violations by telemarketers, and that the funds received are merely to recover his legal expenses. However, this explanation contradicts his actions. The TCPA itself allows private plaintiffs to sue for injunctive relief, and to recover statutory penalties, not  attorney's fees and costs.  If Cunningham's motivation was genuinely to obtain injunctive relief, he could sue entirely under the TCPA. Instead, he raises additional state law claims and seeks to prosecute the claims under the "private attorney general" provisions of BPC § 17200 and CCP §1021.5. Continued pursuit of these TCPA claims, at a time when the definition of what exactly constitutes use of an ATDS that is subject to TCPA's provisions has now been clarified, plainly is litigation that is being pursued for an improper purpose, which is to extract quick cash settlements, not seek consumer relief.

STUDENT LOAN ADVOCACY GROUP'S MEMORANDUM OF POINTS & AUTHORITIES RE MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND STAY ACTION PENDING DISPOSTION OF VEXATIOUS LITIGANT DESIGNATION

*c.  Plaintiff's Representation by Counsel.*  Cunningham currently is represented by counsel, although it is unclear just how many of his prior TCPA claims were brought as a *pro se* claimant as opposed to a represented one.  It is without dispute that courts are generally protective of *pro se* litigants, but this same protection does not apply to litigants represented by counsel (*see*, e.g., *Iwachi v. N.Y. City Bd. Of Elections*, 273 F. Supp. 2d 224, 228 (E.D. N.Y. 2003)).

*d.  Plaintiff Has Caused Needless Expense to Other Parties or has Posed an Unnecessary Burden On The Courts & Their Personnel.*  It almost goes without saying based on the checkered history of the prior TCPA claims field by Cunningham that he has caused needless expense to defendants by filing numerous duplicative complaints before different judges who all must read through his complaint and the inevitable defense motion to dismiss or motion for summary judgment, causing an untold waste of the resources of the courts and the litigants.

*e.  Whether Relief Other Than Pre-Filing Injunction Would Be Adequate To Protect Courts & Other Parties.*  For the reasons discussed above, there are no other adequate protections to be afforded by this Court other than a pre-filing order that can protect the courts and other parties from Cunningham's serial TCPA litigation tactics.  The only truly effective way to put a trial judge on advance notice of Plaintiff's history is to require Cunningham or his counsel to seek leave of court with every new TCPA complaint either seek to file in the Ninth Circuit, or at least in this District Court.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

23

STUDENT LOAN ADVOCACY GROUP'S MEMORANDUM OF POINTS & AUTHORITIES RE MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND STAY ACTION PENDING DISPOSTION OF VEXATIOUS LITIGANT DESIGNATION

## V.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that Plaintiff's Complaint be dismissed with prejudice, without leave to amend, and that in the interim, while this motion is pending, Defendant requests that this Court should otherwise stay all other proceedings, especially discovery, and first make the determination of whether Cunningham is a vexatious litigant, and whether any protection should be afforded SLAG and other similarly situated defendants, before Cunningham can continue to pursue any TCPA claim in the Ninth Circuit, or at least in this District Court.

Dated:  April 9 , 2018                    **JANATHAN L. ALLEN, APC**

By:  s/ Timothy Grant
Attorney for Defendant,
STUDENT LOAN ADVOCACY GROUP
Email: tgrant@allenbarron.com

STUDENT LOAN ADVOCACY GROUP'S MEMORANDUM OF POINTS & AUTHORITIES RE MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND STAY ACTION PENDING DISPOSTION OF VEXATIOUS LITIGANT DESIGNATION